OPINION OF THE COURT
Edward H. Lehner, J.
In 1968, at age 58, Edna Mandelbaum obtained employment at the New York Telephone Company as a clerk-typist. In August, 1980, under pressure of being discharged because of excess absences, she resigned her position. Thereafter she applied for the $1,101 retirement benefit provided for by her union, the defendant herein, under its retirement trust plan established on September 26, 1975 (the Plan).
The union rejected her claim because she (1) “resigned” rather than “retired”, and (2) was not a member of the union for the five years immediately preceding the time she left employment as required by the Plan. In this court defendant further argues that plaintiff failed to exhaust her internal union remedies.
With regard to the claim that plaintiff “resigned” and did not “retire”, the court finds no merit to this defense. The Plan contains no definition of “retirement” that, on the *8 proof before the court, would exclude Mrs. Mandelbaum, who resigned shortly before her 70th birthday.
With respect to the exhaustion of internal remedies, section 4.6 of the Plan only provides for a review by the union executive committee if “the Trustees are unable to make a benefit determination satisfactory to themselves”. This is not the case here.
On the crucial issue of union membership for a period of five years, Mrs. Mandelbaum testified that she thought that at all times she was a member of the union because (1) she paid dues, (2) the union represented her in several grievance procedures, and (3) she participated with the union in strikes.
The evidence showed that through a contract between the employer and the defendant, an “agency shop” has existed at the telephone company. Under this arrangement, which is permissible under the National Labor Relations Act (Labor Bd. v General Motors, 373 US 734), membership in the union is optional, but the employee must pay a service fee to the union equivalent to the dues paid by members. Until 1978 when she authorized the deduction of a $25 union initiation fee, the “dues” Mrs. Mandelbaum thought she was paying was in fact the agency shop fee which was identical in amount to union dues.
With regard to the fact that the union represented her in grievance procedures, this was because such a union, as the exclusive bargaining representative of all of the employees has, as stated by the Supreme Court in Vaca v Sipes (386 US 171, 177) “a statutory duty fairly to represent all of those employees, both in its collective bargaining *** and in its enforcement of the resulting collective bargaining agreement”.
Thus the court must conclude that plaintiff, not being a union member for five years prior to her retirement, does not have a contractual claim against the defendant.
Although not raised by the plaintiff, at the conclusion of the trial the court raised the issues to whether the establishment of the Plan in September, 1975, with a five-year *9 retroactive membership requirement, was an unfair labor practice. Prior to that date, all employees paid identical amounts to the union and received identical benefits and representation, except that union members paid a one-time $25 initiation fee for which they were entitled to participate in union affairs.
Certainly a union is entitled to make membership in its organization attractive to employees. But can it do what defendant did herein and use the union treasury, funded equally by members and nonmembers alike, and provide a financial benefit that limits eligibility to persons who have been members for five years? If this plan were negotiated by the union and funded by the employer, it would clearly be violative of section 8 (subd [a], par [3]; subd [b], par [1], cl [A]; subd [b], par [2]) of the National Labor Relations Act (US Code, tit 29, § 158, subd [a], par [3]; subd [b], par [1], cl [A]; subd [b], par [2]) which provides in part:
“(a) It shall be an unfair labor practice for an employer *** (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization”.
* * *
“(b) It shall be an unfair labor practice for a labor organization or its agents — (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 7 [US Code, tit 29, § 157]”.
* * *
“(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a) (3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership”.
In Truck Drivers Local Union No. 807, Int. Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Amer. v National Labor Relations Bd. (506 F2d 1382) the court reversed the National Labor Relations Board and *10 upheld the validity of an employer-financed pension plan against a charge that it was discriminatory because it provided slightly different methods of proving credit for past service in the industry depending on whether one belonged to the union prior to 1937. The court pointed out however that (p 1385) “There is no requirement that an applicant for a pension must be or have been a member of Local 807.” If there were such a requirement, clearly the court would have declared the plan an unfair labor practice.
See, also, Radio Officers v Labor Bd. (347 US 17), where the court struck down a union negotiated contract that provided additional vacation pay allowances and retroactive wage benefits to union members, and Hospital & Nursing Home Employees Union Local 113, AFL-CIO (228 NLRB [CCH] No. 197, par 18077) where the National Labor Relations Board declared invalid a provision in a contract between the union and the employer under which union members had a 90-day grace period to pay dues, but agency shop employees had only 10 days.
Although the above-quoted statutory language prohibits a union from contracting with an employer for a term of employment which would encourage membership in the union, it does not specifically prohibit the use of its own funds, obtained from members and nonmembers, to provide greater benefits to its members and in this manner encourage memberships. Although the court has been unable to find any case squarely on point, there is an implication in Railway Clerks v Allen (373 US 113) and Del Casal v Eastern Airlines (634 F2d 295) that such a union-financed discriminatory provision might not offend the statute.
If the court were satisfied that under substantive law the Plan was clearly violative of the Federal statute, it would, under its obligation to do “substantial justice” (CCA, § 1804) render judgment for the plaintiff. However, the issue is not clear and under the “primary jurisdiction” doctrine, I must refer Mrs. Mandelbaum to the National Labor Relations Board, the agency created by Congress to have primary jurisdiction to determine violations of the Federal labor law. In the leading case on this subject, San Diego *11 Unions v Garmon (359 US 236, 244-245), the Supreme Court said:
“At times it has not been clear whether the particular activity regulated by the States was governed by § 7 or § 8 or was, perhaps, outside both these sections. But courts are not primary tribunals to adjudicate such issues. It is essential to the admininstration of the Act that these determinations be left in the first instance to the National Labor Relations Board ***
“When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.
“To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7, or prohibited by § 8, then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States”.
It is perhaps regrettable that the “bottom line” is that a “federal case” is to be made out of a small claims action, but the claim is of significance to many others and the court must comply with procedures mandated by the Supreme Court.
Thus, judgment may be entered for defendant, without costs and without prejudice.